UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOMINIC TAMBURINO,

               Plaintiff,

v.

VANESSA TAYLOR et al.,

               Defendants.
_____/

Case No. 1:17-cv-942

Honorable Janet T. Neff

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint.

## Discussion

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Parnall Correctional Facility (SMT) in Jackson County, Michigan. Plaintiff sues MDOC Director Heidi Washington, Ingham County Probation Agent Vanessa Taylor, an

unidentified Ingham County District Attorney, unidentified Ingham County Court administration employees, unidentified Ingham County Jail administration employees, Court Recorder Susan Melton, State Court Administrator James Hughes, Court Transcriber Leslie Fox, Trial Court Services Division employee Stacy Westra, and another unidentified individual.

According to the MDOC's Offender Tracking Information System, Plaintiff is incarcerated for two convictions of second-degree home invasion and one conviction of tampering with an electronic monitoring device, all of which are based on guilty pleas. In his complaint, Plaintiff alleges that he pleaded guilty to home invasion on February 17, 2005. According to documents attached to his complaint, he was set to be sentenced in March, but his sentence was delayed so that he could complete a residential program. He remained in jail while awaiting space in the program. He entered the residential program on May 16, 2005, but he did not complete the program so he returned to jail. On July 18, 2005, Defendant Vanessa Taylor completed a presentence report showing that Plaintiff was entitled to 198 days of jail credit. (Presentence Investigation Report, ECF No. 1-1, PageID.12.) On July 20, 2005, the Ingham County Circuit Court sentenced Plaintiff to 10 months in jail and three years of probation, with 198 days of credit for time served. (7/20/2005 J. of Sentence, ECF No. 1-1, PageID.26; *see also* Order of Probation & J. of Sentence, ECF No. 1-1, PageID.42.) Plaintiff alleges that the court told him at the sentencing hearing that he would be sentenced to "not more than 1 year 10 months time served and 3 years probation [sic]." (Compl., ECF No. 1, PageID.6.) Plaintiff apparently contends that this statement meant that he should have been released to probation because his sentence was for "time served." In addition, he contends that he should have received credit for more than 198 days. The 198 days was allegedly calculated based on the time served up until the initial date scheduled for his sentence, March 23, 2005. (*See* 6/7/2006 Probation Violation Report, ECF No.

1-1, PageID.14.) Plaintiff contends that this number did not take into account his additional time in jail while awaiting space in the residential program (53 days), the time in jail after leaving the residential program until his sentence (14 days), and good time credit. If he had been given all the credit he contends was due to him, then he would have been eligible for immediate release on parole notwithstanding the 10-month jail sentence.

When Plaintiff returned to the jail immediately after his July 20, 2005 sentencing hearing, he thought that he would be released and told to report to probation. However, he learned that he would not be released on probation until 61 days later, on September 19, 2005.

Based on the documents attached to the complaint, it appears that Plaintiff was released on parole on September 19, 2005, and then he violated the terms of his parole on multiple occasions in December of that year. He was required to spend several days in jail and then was released on probation again. On June 15, 2006, he pled guilty to another violation of his probation and in July of that year his probation was revoked and he was sentenced to 18 months to 15 years in prison, with credit for 375 days in jail. (6/7/2006 J. of Sentence, ECF No. 1-2, PageID.93.) The probation violation report prepared in advance of that sentence indicates that he had 198 days of jail credit prior to March 23, 2005. (ECF No. 1-1, PageID.14.)

At some point, Plaintiff attempted to glean more information about the sentence he received in July 2005. In 2013, he was able to obtain a copy of the plea and sentencing transcripts from 2005. Defendant Susan Melton was the court reporter. Defendant Leslie Fox prepared the transcripts. When Plaintiff reviewed the sentencing transcript, it did not match his memory of what the judge stated on the record. Instead of the judge telling Plaintiff that he would be sentenced

to time served and 3 years of probation, the prosecutor states that Plaintiff's jail credit should be 198 days. (Sent. Tr., ECF No. 1-1, PageID.30.)[1]

Apparently, Plaintiff asked the state administrative office to review the video of the sentencing hearing to determine whether it matched the sentencing transcript. Defendant James Hughes wrote Plaintiff a letter confirming that the video matched the transcript. (4/11/2014 Hughes letter, ECF No. 1-1, PageID.44.)

Plaintiff also filed a motion for relief from judgment in Ingham County Circuit Court regarding the jail credit. The judge reviewed the motion and determined that Plaintiff was "partially correct—the trial court did erroneously calculate Defendant's jail credit at the time of sentencing on July 20, 2005 as 198 days when it should have been 265 days[.]" (7/25/2016 Cir. Ct. Order, ECF No. 1-1, PageID.47.) However, the court determined that the issue was "moot" because Plaintiff was given the total amount of credit to which he was entitled when he was sentenced again in July 2006. (*Id.*) In addition, the court concluded that Plaintiff appeared to have received all of his jail credit in 2005, notwithstanding the 198 days written on the sentence, because Plaintiff served only two months of his 10-month jail sentence. If he did not receive his credit, he would have served three and a half months of his sentence. (*Id.*)

Plaintiff also filed an administrative complaint against Court Reporter Susan Melton with the Michigan Court Reporting and Recording Board of Review based on the alleged inaccuracies in the sentencing transcript. This complaint was dismissed by Stacy Westra because Hughes had already determined that there was no inconsistency between the video record and the written transcript. (*See* 9/8/2016 Westra Letter, ECF No. 1-1, PageID.54.)

---

[1] Plaintiff does not mention the fact that, at another place in the hearing transcript, the judge states that Plaintiff's sentence would be "Three years . . . probation. . . . 10 months Ingham County Jail, 198 days previously served[.]" (Sent. Tr., ECF No. 1-1, PageID.37.)

4

As the basis for his present action, Plaintiff asserts several claims. (*See* Compl., PageID.8-9 ("Question[]s Presented").) First, he claims that the Ingham County Jail did not have the right to keep in him custody after July 20, 2005. Second, he claims that Probation Agent Taylor should have followed up after July 20, 2005, to determine whether Plaintiff had been released from custody. Third, he claims that he could not have violated his parole if the "Order of Probation" issued on July 20, 2005, was invalid. (*Id.*) Fourth, he claims that the Ingham County probation department, Ingham County prosecutor's office, and Ingham County court administration were present for a hearing in September 2005 and all of them received a copy of the order of probation, yet none of them corrected it. Fifth, he claims that unidentified individuals changed the audio or video of the July 20, 2005, sentencing hearing, in violation of state and federal law. Sixth, Defendant Hughes' determination that the transcripts match the video and audio must have been incorrect because the transcript contradicts the judgment of sentence (as well as the order of probation and the presentence investigation report). Seventh, the Michigan Supreme Court trial court services division did not investigate Plaintiff's claim regarding the sentencing transcript. Eighth, the state court improperly denied Plaintiff's request for transcripts of a probation violation hearing.

As relief, Plaintiff seeks damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

When assessing whether the complaint states a claim, the Court may consider documents attached to the complaint. *Cates v. Crystal Clear Tech., LLC*, -- F.3d --, No. 16-6714, 2017 WL 4872977, at *4 (6th Cir. Oct. 30, 2017). "Further, '[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Id.* (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claim 1: Custody After July 20, 2005

Plaintiff asserts that officials at the Ingham County Jail did not have authority to keep him in custody after July 20, 2005. This claim arguably implicates Plaintiff's rights under the Fourteenth Amendment and/or Eighth Amendment. "[A]n incarcerated inmate has a 'liberty interest in being released at the end of his term of imprisonment.'" *See Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007) (quoting *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004)). "This liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment." *Id.* (citing cases). But courts have also recognized that the Eighth Amendment might be implicated. *See Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)) (Eighth Amendment); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc) (Eighth Amendment).

> To establish § 1983 liability in this context, a plaintiff must [1] first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Shorts*, 255 F. App'x at 55 (quoting *Sample*, 885 F.2d at 1110).

Plaintiff does not state a claim because the judgment of sentence unequivocally states that he received a sentence with a term of 10 months in jail, with 198 days of credit, commencing July 20, 2005. (J. of Sentence, ECF No. 1-1, PageID.26.) Plaintiff does not allege that the jail officials were present at the sentencing hearing or were aware of what the judge allegedly stated at that hearing. Nor does he allege that they were aware of, or deliberately

indifferent to, a risk that Plaintiff would receive unwarranted punishment. If they received a copy of his sentence, they acted in accordance with that sentence. The written judgment of sentence did not require them to release Plaintiff to probation, and at the end of the day, the written judgment is what matters. *See People v. Vincent*, 565 N.W.2d 629, 634 (Mich. 1997) (recognizing the "well established" rule that "'courts speak through their judgments and decrees, not their oral statements or written opinions'") (quoting *Tiedman v. Tiedman*, 255 N.W.2d 632, 634 (Mich. 1977)). There is, thus, no basis for finding Defendants liable for not releasing him.

### B. Claim 2: Failure to Follow Up

Plaintiff does not state a claim against Defendant Taylor, the probation agent, for failing to make sure that Plaintiff was released, especially when release would have conflicted with the written order of judgment. She did not have custody over Plaintiff and did not have a duty to ensure that jail officials were properly exercising their authority to keep him in custody. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Taylor engaged in any active unconstitutional behavior.

### C. Claim 3: Order of Probation

Plaintiff contends that he could not have violated his parole if the "Order of Probation" issued on July 20, 2005, was invalid. The reasoning behind this claim is not entirely clear. Plaintiff apparently believes that this order is further evidence that he should have been released to probation on July 20, 2005, because the order relates to probation and it is dated July 20, 2005. (Order of Probation & J. of Sentence, ECF No. 101, PageID.42.) Plaintiff was not

8

released to probation until a later date, however, which ostensibly means that the Order of Probation must have been deemed invalid. If the probation order was invalid, then Plaintiff could not have been found guilty of violating his probation in 2006. This argument fails at the first step, because the order of probation expressly states that Plaintiff is to serve "Ten (10) months Ingham County Jail; credit for 198 days." (*Id.*) Thus, the order does not support Plaintiff's belief that he should have been released from jail on July 20, 2005.

Even if a claim could be made out from Plaintiff's allegations regarding the validity of the order of probation, he does not identify any defendants with respect to this claim. Thus, he does not state a claim.

### D. Claim 4: Correcting the Order of Probation

Plaintiff claims that Ingham County probation department, Ingham County court administration, and Ingham County prosecutor's office failed to correct the order of probation, even though they were present for the sentencing hearing. But they were not required to make any correction. Moreover, they had no authority to do so. A circuit court judge signed the order. The probation department, the court administration, and the prosecutor's office did not possess the authority to alter an order signed by the judge and issued by the court. Furthermore, their failure to raise the issue to the court does not give rise to a constitutional claim. Indeed, if there was any error in the order or in Plaintiff continued confinement in jail, Plaintiff should have brought that issue to the attention of the court.

### E. Claim 5: Changing the Sentencing Record

Plaintiff's assertion that unidentified individuals altered the video of the sentencing record does not state a constitutional claim. Plaintiff does not have a constitutional right to an

9

accurate video and audio recording of his proceedings. As indicated above, the written judgment is what matters. If the judgment was incorrect, Plaintiff should have challenged it in state court.

### F. Claim 6: Hughes' Determination

Plaintiff questions the determination by Administrator Hughes that the video of the sentencing hearing matched the transcript. This does not state a viable claim under § 1983. Plaintiff does not have a constitutional right to a determination on whether a hearing transcript matches the video/audio recording of the hearing, nor does he have a right to have this Court review Hughes' decision. Moreover, Plaintiff's contention that the judgment of sentence and order of probation conflict with the transcript is meritless. They are consistent. All of them provide for 10 months in jail with 198 days of credit and three years of probation.

### G. Claim 7: Michigan Supreme Court Investigation

Plaintiff contends that the Michigan Supreme Court trial services division should have investigated his claim that the transcript was not consistent with what was stated at his sentencing hearing. This does not state a claim under § 1983. Plaintiff does not have a right to such an investigation, under the United States Constitution or otherwise.

### H. Claim 8: Denial of Transcripts

Plaintiff asserts that the circuit court denied him a copy of transcripts from a probation violation hearing. Plaintiff contends that it would be "reasonable" for him to have these transcripts in order to show that the "order of probation" was valid and that Plaintiff agreed to the conditions of this order. (Compl., PageID.9.) Plaintiff has not identified a constitutional basis for this claim, and the Court is not aware of one.

In effect, Plaintiff is challenging the decision of the state court. This Court lacks subject matter jurisdiction over such a challenge. A federal district court has no authority to review

final judgments of state-court proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). A loser in the state court may not be heard in the federal district court on complaints of injuries by a state-court judgment rendered before the federal proceeding commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005).

Moreover, it is not clear how the transcript of a probation violation hearing has any relevance to Plaintiff's claim that the order of probation is invalid. Furthermore, if the order of probation was valid, then it was proper for the state to keep him in jail after July 20, 2005, because the order of probation expressly provides for a 10-month jail sentence with 198 days of credit. Thus, he fails to state a claim.

### III. <u>Supplemental Jurisdiction</u>

To the extent that Plaintiff asserts any claims under state law that are not addressed by the Court's discussion in Section II, the Court declines to exercise jurisdiction over such claims. Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991). Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action under § 1983 will be dismissed for failure to state a claim. Any state-law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 15, 2017        /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge